In re John and Sharon WEIDMAN,
Debtors.

No. 02–51355–R.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Oct. 25, 2002.

Kurt A. O'Keefe, Detroit, MI, R. Scott Vanderford, Redford, MI, for debtors.

Paul J. Randel, Mark H. Shapiro, Southfield, MI, for trustee.

*Opinion Regarding Trustee's Objections to Debtor's Exemptions*

STEVEN W. RHODES, Chief Judge.

This matter is before the Court on the trustee's objection to Sharon Weidman's claim of exemption of her interest in an annuity under 11 U.S.C. § 522(d)(10)(E). The Court conducted an evidentiary hearing on September 25, 2002, and took the matter under advisement. The Court now concludes that the annuity does not qualify for exemption under § 522(d)(10)(E).

## I.

In 1987, Sharon Weidman's mother drafted her last will and testament in which she bequeathed to Weidman a portion of her estate as follows:

> ... all the rest and residue of my estate, the residue to be received in the form of an annuity to be purchased from NEW YORK LIFE INSURANCE COMPANY by my Personal Representative, that said annuity shall pay SHARON LYNN WEIDMAN the sum of One Thousand Dollars ($1,000.00) each and every month from the date of my death until SHARON LYNN WEIDMAN shall reach the age of sixty-five (65) years at which time the annuity shall be liquidated and the balance paid to SHARON LYNN WEIDMAN[.]

(See Debtor's Ex. A, at 3.)

Weidman's mother died on January 1, 1990. As required by her mother's will, on December 12, 1990, Weidman purchased an annuity from the New York Life Insurance Company for a single premium amount of $123,696.39. (See Trustee's Ex. 3.) The annuity was structured to provide Weidman with a monthly payment of $1,000 for a guaranteed period of 19 years and 3 months, which corresponds with the time that Sharon Weidman will turn 67 years old.[1]

On May 10, 2002, Sharon Weidman and her husband, John Weidman, filed a joint chapter 7 petition. On Schedule B—Personal Property, Weidman disclosed the annuity and valued it at $84,000. On Schedule C—Property Claimed Exempt, Weidman listed the annuity and claimed it exempt under § 522(d)(10)(E).

## II.

The trustee asserts that the annuity does not qualify for exemption under § 522(d)(10)(E) because the debtor's right to receive payments under the annuity is not on account of illness, disability, death, age, or length of service. Further, the trustee asserts that the annuity was not intended as a substitute for future earnings, which is what the statute is designed to protect.

Weidman argues that the annuity does qualify under § 522(d)(10)(E) because it was triggered by the death of her mother and also the payments are on account of age because they began after Weidman had reached the age of 47. Weidman also asserts that it was the intent of her mother to provide future income to her as she aged.

1. Weidman testified that the annuity is scheduled to terminate when she is age 66. As noted, the will provides for the annuity to continue until the debtor reaches age 65. However, based on Weidman's date of birth of March 15, 1943, as reflected on the annuity application, the date of the application of December 12, 1990, and the term of the annuity of 19 years and 3 months, the annuity will actually end when Weidman reaches age 67.

### III.

Section 522(d)(10)(E) provides, in part, that a debtor may claim an exemption in the debtor's right to receive:

a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor[.]

11 U.S.C. § 522(d)(10)(E).

■■■ "[E]xemptions are to be liberally construed in favor of debtors in order to give full effect to the legislative intent of providing a fresh start." *In re Bates,* 123 B.R. 38, 40 (Bankr.S.D.Ohio 1990). The exemption of payments under a pension, annuity, or similar plan, is intended to protect payments which function as wage substitutes after retirement. *In re Caslavka,* 179 B.R. 141, 143–44 (Bankr. N.D.Iowa 1995). In effect, they are payments intended to support basic living requirements during the time of life when earning capacity is limited by age, disability or illness. *Eilbert v. Pelican (In re Eilbert),* 162 F.3d 523 (8th Cir.1998). The intent of the drafters of § 522(d)(10)(E) is stated in the House Report, which states:

Paragraph (10) exempts certain benefits that are akin to future earnings of the debtor. These include social security, unemployment compensation, or public assistance benefits, veteran's benefits, disability, illness, or unemployment benefits, alimony, support, or separate maintenance (but only to the extent reasonably necessary for the support of the debtor and any dependents of the debtor), and benefits under a certain stock bonus, pension, profit-sharing, annuity or similar plan based on illness, disability, death, age or length of service.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 362 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, 5787, 6318.

■■ Courts have generally applied a three-part test to determine whether an asset is exempt under § 522(d)(10)(E). The right to payment is exempt only if the payments:

(1) are received pursuant to a "stock bonus, pension, profit sharing, annuity, or similar plan or contract,"

(2) are "on account of illness, disability, death, age or length of service," and

(3) are reasonably necessary for the debtor's support or for the support of a dependent of the debtor.

*Eilbert,* 162 F.3d at 527–28.

### IV.

■■ In *Eilbert,* on October 27, 1994, the 74 year-old debtor purchased a $450,000 single premium variable annuity with the proceeds from her deceased husband's estate. She elected to begin receiving annuity payments on January 1, 1995. The annuity contract provided that the debtor would receive monthly payments equal to a ten percent annual return during her lifetime, with the balance divided at her death between two of her children. In December, 1995, the debtor filed for chapter 7 relief, claiming her interest in the annuity exempt under Iowa Code § 627.6(8)(e), which is nearly identical to § 522(d)(10)(E). The bankruptcy court sustained the trustee's objection and the Bankruptcy Appellate Panel affirmed. On appeal to the Eighth Circuit, the court first considered whether the asset at issue was a "pension, annuity, or similar plan or contract." The debtor argued that *any* annuity is an "annuity" for purposes of the statute. The court disagreed, stating:

As the Bankruptcy Appellate Panel noted, " 'annuity' is a purely generic term which refers to the method of payment

and not to the underlying nature of the asset." ... In this case, because the term "annuity" is broad and generic, we apply the interpretive canons *noscitur a sociis* (a term is known from its associates) and *ejusdem generis* (general words in an enumeration are construed as similar to more specific words in the enumeration). *See Fleur de Lis Motor Inns, Inc. v. Bair*, 301 N.W.2d 685, 690 (Iowa 1981). These canons are employed "to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). Accordingly, we determine the meaning of "annuity" by reference to the words surrounding it in § 627.6(8)(e), "pension ... or similar plan or contract."

A pension is a "[r]etirement benefit paid regularly ... based generally on length of employment and amount of wages or salary," in other words, "[d]eferred compensation for services rendered." BLACK'S LAW DICTIONARY 1134 (6th ed.1990). Because "pension" is the more specific word, it restricts the meaning of "annuity" in § 627.6(8)(e). When dealing with a claim for exemption of an annuity payment "on account of age," the conjunction of the two words suggests that "annuity," like "pension," describes a plan or contract to provide benefits in lieu of earnings after retirement, whether funded by the employer or purchased by the employee or the self-employed. Likewise, the catchall provision, "similar plan or contract," includes within the exemption other types of retirement plans or investments that are "created to fill or supplement a wage or salary void." *Matter of Pettit*, 55 B.R. 394, 397–98 (Bankr.S.D.Iowa) (profit sharing plan exempt), *aff'd*, 57 B.R. 362 (S.D.Iowa 1985). This construction of the term "annuity" is consistent with the language and purpose of the federal exemption in 11 U.S.C. § 522(d)(10)(E), on which the Iowa exemption was based....

The payments received by Eilbert under her single premium annuity investment are not "akin to future earnings." The payments do not replace lost income, and the annuity was not purchased with contributions over time as part of a long term retirement strategy. Instead, the annuity was purchased with non-exempt, inherited assets as a prebankruptcy planning measure by a prospective debtor who happened to have already reached retirement age. We agree with the Bankruptcy Appellate Panel that this investment was not a "pension, annuity, or similar plan or contract" within the meaning of § 627.6(8)(e). *Accord In re Gagne*, 166 B.R. 362, 365 (Bankr. D.Minn.1993) (construing similar Minnesota exemption), *rev'd in part on other grounds*, 179 B.R. 884 (D.Minn.1994).

*Id.* at 526–27 (footnotes omitted).

Here, the annuity was merely the debtor's share of her mother's inheritance, with which she was required, pursuant to the terms of her mother's will, to purchase an annuity. The payments did not replace lost income and are not akin to future earnings. The annuity was not purchased with contributions over time as part of a long term retirement strategy. In fact, the payments are scheduled to *end* when the debtor reaches age 67, and thus are not intended as a substitute for earnings after retirement.

Accordingly, the Court concludes that the debtor's annuity does not qualify as "a stock bonus, pension, profit-sharing, annuity, or similar plan or contract," under § 522(d)(10)(E).

## V.

 Even if the debtor satisfied the first requirement, her exemption would fail under the second requirement because the payments are not "on account of illness, disability, death, age, or length of service."

In *In re St. John,* 221 B.R. 651 (Bankr. D.Conn.1998), the debtor, then aged sixty-nine, purchased àn annuity for approximately $40,000. The debtor had inherited the $40,000 from the probate estate of his stepfather. The annuity provided monthly payments of $373.53 for the debtor's lifetime. Six years later, the debtor filed for chapter 7 relief and claimed the annuity exempt under § 522(d)(10)(E). In denying the exemption, the court stated:

> It is clear from the stipulated facts that the debtor's annuity was not established "on account of illness, disability, death, age or length of service." The annuity simply provides for monthly payments to the debtor to begin immediately upon his purchase of the annuity and to continue throughout the debtor's life. This annuity comes neither within the plain language of § 522(d)(10)(E) nor within its purpose. *See* H.R. REP. NO. 95–595, 95th Cong., 1st Sess., at 362 (1977) ("Paragraph 10 exempts certain benefits that are akin to future earnings of the debtor."). *See also In re Neto,* 215 B.R. 939, 946 (Bankr.D.N.J.1997) (holding that an annuity purchased by the state of New Jersey to fund payments of the debtor's state lottery winnings was not exempt pursuant to § 522(d)(10)(E) because the annuity was not "on account of illness, disability, death, age, or length of service" and the lottery proceeds were not intended to be substitutes for future earnings); *In re Miller,* 16 B.R. 790, 791–92 (Bankr.D.Md.1982) (concluding that lottery winnings paid from an annuity contract were not exempt under § 522(d)(10)(E) because "[t]he Code expressly provides that the only form of annuity contract subject to exemption is one 'on account of illness, disability, death, age, or length of service.'"). The debtor's annuity is simply another form of previously acquired cash, property of his estate and not exemptible.

*Id.* at 652 (footnote omitted).

Weidman's right to receive payments under the annuity contract is not conditioned on any of the factors listed in § 522(d)(10)(E). There is simply no support for Weidman's contention that because the purchase of the annuity was triggered by the death of her mother, it qualifies under § 522(d)(10)(E). Additionally, the fact that the payments began when the debtor was 47 does not make them "on account of age." The payments simply began at the time the annuity was purchased, which was shortly after Weidman's mother died.

Accordingly, the trustee's objection to the debtor's claim of exemption is sustained.