In re Paige Ann SWEENEY, Debtor.

Paige Ann Sweeney, Plaintiff,

v.

Educational Credit Management
Corporation, Defendant.

No. 8:02CV238.

United States District Court,
D. Nebraska.

Dec. 12, 2002.

Stephanie W. Milone, Omaha, NE, for Plaintiff.

Donald B. Stenberg, Attorney General's Office, Gary L. Young, Keating, O'Gara Law Firm, Lincoln, NE, for Defendants.

## MEMORANDUM AND ORDER

SHANAHAN, District Judge.

Before the court is the Defendant's "Notice of Appeal" (Filing No. 2) and the Defendant's "Addendum to Notice of Appeal" (Filing No. 3). The Defendant is appealing an order and judgment of the United States Bankruptcy Court for the District of Nebraska. In an Order dated March 5, 2002 ("Order"), Bankruptcy Judge Timothy J. Mahoney ruled in favor of the Plaintiff, Paige Ann Sweeney ("Sweeney"), thereby discharging her student loans. Pursuant to 28 U.S.C. § 158, NELR 76.1(c), and Bankruptcy Rules of Procedure 8001 ff, this court has reviewed Judge Mahoney's Order and the record, including the transcript of the hearing before Judge Mahoney.

The Defendant, Educational Credit Management Corporation ("ECMC"), has appealed on the following grounds: one, the Bankruptcy Court's determination that Sweeney's student loans would create an undue hardship was erroneous; two, the Bankruptcy Court's holding that a loan might impose a hardship on the debtor's marriage is an inappropriate basis for finding undue hardship; three, the Bankruptcy Court committed error in not considering Sweeney's total family income, in particular, the income of Sweeney's husband; four, the Bankruptcy Court's finding that the debtor is generally the sole support for herself and her two children who live with her was erroneous; five, the Bankruptcy Court's finding that the debtor solely pays for her living expenses was erroneous; six, the Bankruptcy Court erred in utilizing as a basis the conclusion that the debtor has an arrangement between the debtor and her spouse about how much household income she contributes; and seven, the Bankruptcy Court erroneously credited Sweeney's testimony that her husband's monthly expenses were similar to hers without an accounting for those expenses.

For the reasons stated herein, the court affirms the Bankruptcy Court's Order.

## I. ANALYSIS AND DISPOSITION

Appellate courts review bankruptcy court's factual findings for clear error. The determination of whether excepting a student loan from discharge will result in undue hardship is a question of fact. Therefore, a bankruptcy's determination of undue hardship is reversible only for clear error. *See In re Andresen*, 232 B.R. 127, 128 (8th Cir. BAP 1999). However, the court does conduct a de novo review of a bankruptcy court's conclusions

of law. *See Eilbert v. Pelican,* 162 F.3d 523, 525 (8th Cir.1998).

## A. Applicable Law and Facts

■ This case involves the question whether the Bankruptcy Court should discharge Sweeney's student loans. Student loans are non-dischargeable, unless the debtor establishes that excepting the loan from discharge would impose an **undue hardship** on the debtor or his dependants. *See* 11 U.S.C. § 523(a)(8). Congress adopted § 523(a)(8) principally for two reasons: 1) Congress was concerned with students abusing the bankruptcy system, and 2) Congress wanted to protect the solvency of the student loan program. *See In re Andresen,* 232 B.R. 127, 130 (8th Cir. BAP 1999) *citing* Raymond L. Woodcock, *Burden of Proof, Undue Hardship, and Other Arguments for the Student Debtor Under 11 U.S.C. § 523(a)(8)(B),* J.C. & U.L. 377, 381–384, (1998).

An illustration of a student abusing the system is the student who is on the cusp of a lucrative career and then, upon graduation, declares bankruptcy. *See Johnson v. Missouri Baptist College (In re Johnson),* 218 B.R. 449, 451 (8th Cir. BAP 1998). Sweeney, however, presents the situation of a woman who is starting her life over again without the prospects of substantial future earnings.

■ To determine whether a debtor or a debtor's family is experiencing undue hardship from a student loan, courts have adopted various tests in light of the fact that "undue hardship" is not defined in § 523(a)(8). In the Eighth Circuit, the test for undue hardship is the *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews),* 661 F.2d 702 (8th Cir.1981) test as recently interpreted by *Andresen.* The *Andrews/Andresen* test for undue hardship is a totality of the circumstances inquiry "with special atten-

tion to the debtor's current and future financial resources, the debtor's necessary reasonable living expenses for the debtor and the debtor's dependents, and any other circumstances unique to the particular bankruptcy case." *See Andresen* at 140.

## B. Application of *Andrews/Andresen* Test

■ In this case, the Bankruptcy Court applied the *Andrews/Andresen* totality of the circumstances test. However, in applying the preceding test, it is somewhat unclear to what degree the Bankruptcy Court considered the income of Sweeney's present husband, Jay Young. *See* Order at 2–3. Whether the Bankruptcy Court is required to consider the husband's income in determining whether Sweeney presents a situation of undue hardship is a question of law for this court.

The Bankruptcy Court recognized that "... there is a requirement that the total family income situation be considered when determining whether a requirement of payment of a student loan debt would place an undue burden upon the debtor or her dependants ...." Order at 3, *citing Dolan v. American Student Assistance (In re Dolan),* 256 B.R. 230, 236 (Bank. D.Mass.2000). However, the exact manner in which the Bankruptcy Court considered Jay Young's income is unclear inasmuch as Judge Mahoney writes: "[T]he evidence in this case is convincing on the issue of whether or not her husband's income should need to be considered when determining whether the debtor has the ability to pay the debt." Order at 3.

■ In this court's view, no evidence can change the requirement that a court must consider a spouse's income in deciding whether a student loan constitutes an undue burden. Overwhelming authority requires that a court consider the spouse's

income. This court finds no published opinion of a court that holds to the contrary. The court in *White v. United States Department of Education, et al.,* 243 B.R. 498 (Bankr.N.D.Ala.1999) cites no less than forty-nine (49) cases in which courts have held that a court must consider the earnings of both the debtor and his spouse in evaluating whether a student loan creates an undue hardship. *See White* at n. 9. For reasons of sound authority and sound public policy, the court must view undue hardship in light of the total income of the family.

The outstanding balance on Sweeney's student loan is over $45,000.00. Sweeney has recently remarried. Presently, both Sweeney and her husband, Jay Young, are employed by a title insurance company. Her net income is $1,750.00 per month, while Jay Young's net monthly income is $1,600.00. Sweeney has four children: Shane Hanzlik—18 years of age; Nathanael Sweeney, age 9; Nicolas Sweeney, age 8; and Echo, a daughter who will soon be four years old. Shane and Echo reside with Sweeney, while Nathanal and Nicholas live with Sweeney's former husband. According to Sweeney, she has about "$150 a month left after all my bills are paid." Transcript ("TR") at 15:11–16. Even with her present husband's income, the family is unable to make ends meet or, as Sweeney testified: "We have no money left over . . . ." TR at 15:20–24.

Sweeney's monthly expenses include the following: $350.00 for court-ordered child support; $400.00 child care; $50.00 car insurance; $150.00 groceries; $500.00 for her share of household expenses (rent and utilities). Additionally, Sweeney pays for her transportation (which includes the use of her 1992 Saturn with 115,000 miles),[1] for her children's clothing ($42.00 per month), for her children's school activities, and for a portion of health care obligations for her children who live with her husband. She has no savings and no retirement fund. Additionally, she owes her former husband $5,000.00 as her share of medical expenses for Sweeney's two sons in the custody of Sweeney's former husband. This $5,000.00 accrued debt is in addition to the court-ordered child support of $350.00 per month. Also, Sweeney is paying $12.50 per month for dental and medical expenses in addition to the accrued $5,000.00 in expenses for the children living with her former husband. Additionally, Sweeney pays $16.00 per month as a gym fee and a monthly car tax of $7.00 as well as $2.50 monthly for disability insurance. She also has an outstanding credit card debt of approximately $200.00. It appears that child support paid by Sweeney ($350.00) may be increased to $525.00 to conform with the "Nebraska Guideline Schedule" for child support.

Although Sweeney's testimony is not in the form of a precise arithmetic analysis and list of family expenses, the court notes that the expenditures mentioned are common expenses that anyone with children would pay. An exact accounting for these expenses is unnecessary to determine whether Sweeney's student loan is an undue burden under the *Andrews/Andresen* totality of the circumstances test.

In addition to Sweeney's income and expenses, the court must also evaluate the situation regarding income and expenses pertaining to Sweeney's husband, Jay

---

1. Although Sweeney did not assign a dollar value to transportation costs, the court in In *In re Cline,* 245 B.R. 617, 621 (Bankr. W.D.Mo.2000) *affirmed In re Cline,* 248 B.R. 347 (8th Cir. BAP 2000), found that for a debtor who drives a 1992 Nissan Sentra with 103,000 miles "an allowance of $250.00 per month for maintenance and/or payments is reasonable."

Young. The court agrees with the Bankruptcy Court that "[the court] does not believe for one minute" that Sweeney and her husband, who have a joint income of a little over $3,000 per month and who support four children, have $1,800 left at the end of the month. *See* TR at 46:13–16. The foregoing is a rather emphatic statement that the Bankruptcy Court did consider the income of Sweeney's husband, Jay Young. Nearly as incredulous is ECMC's argument in its brief to this court that this family has a monthly surplus of $1,466.00. *See* Defendant's brief at 5. ECMC apparently comes to these figures by incorporating Mr. Young's income without recognizing that at the end of the month, Mr. Young "doesn't have very much money left over." TR at 38:18–21.

The Bankruptcy Court did not actually engage in a debit and credit accounting of Young's expenses. Part of the reason is that Sweeney was not married when she filed for bankruptcy. The marriage being so recent makes it difficult for a court to engage in a "normal" total family accounting. However, no dollar-for-dollar accounting for the husband's expenses is needed. Sweeney's uncontested testimony is that her husband, after paying all of his expenses, "doesn't have much money left over" at the end of the month. TR at 38:18–21. No evidence in the record refutes this fact. On its face, Sweeney's testimony is quite reasonable inasmuch as Mr. Young only makes net wages of approximately $1600.00 a month. *See* TR 30:15–20.

This court finds the above evidence is sufficient, in light of the requirement that the husband's income must be considered, in order to judge whether repayment of Sweeney's student loans, in light of the total family income, is an undue burden. Even if her husband has "a little bit of money left over," such extra money does not make up for the fact that Sweeney's expenses (none of which is for luxury items) are likely equivalent to, if not more than, her income. This court finds the *Dolan* court persuasive inasmuch as that court concluded: "[T]he Court views the Debtor's spouse's income as, at best, an economic buffer between the Debtor and unforeseen drains on his own monetary resources. The Court, therefore, does not view the Debtor's spouse as a significant economic resource upon which he can draw in retiring these student loans." *Dolan* at 238–39. Young's net income, likewise, is not a significant resource upon which Sweeney can draw upon in order to pay off her student loans.

The Bankruptcy Court's Order is accurate and consistent with applicable law since Judge Mahoney did apply the *Andrews/Andresen* test for undue hardship. In applying that test, the Bankruptcy Court credited Sweeney's testimony that her husband's monthly expenses were similar to hers without a mathematically precise accounting for those expenses.

The Bankruptcy Court did state, as ECMC contends, that the loan might impose a hardship on the debtor's marriage. Under the *Andrews/Andresen* test, the court may look at "any other circumstances unique to the particular bankruptcy case." *See Andresen* at 140. That is what the Bankruptcy Court did in this case. The new marriage and the fact that the bankruptcy was declared before Sweeney was ever even married to Mr. Young are factors unique to Sweeney's bankruptcy case, and the Bankruptcy Court properly considered these circumstances in light of the *Andrews/Andresen* test.

The Bankruptcy Court did not err in finding that the debtor is generally the sole support for herself and her two children and that the debtor solely pays for her living expenses. Also, the Bankruptcy

Court did not err in utilizing as a basis for its conclusion that the debtor has an arrangement between the debtor and her spouse regarding Sweeney's contribution to her family's support.

The Bankruptcy Court ruling of undue burden based on these facts—Sweeney supporting 4 children and with a total family monthly income of about $3,350 and a student loan debt of over $45,000—is consistent with other courts' findings of undue burdens. *See In re Cline*, 248 B.R. 347 (8th Cir. BAP 2000) (no children/not married; $1,578 monthly income; $53,500 student loans); *In re Coats*, 214 B.R. 397 (Bankr.N.D.Okla.1997) (3 children; $4,218 monthly income, including social security and child support; $39,000 student loans); *In re Skaggs*, 196 B.R. 865 (Bankr. W.D.Okla.1996) (3 children; $3,000 monthly income; $47,000 student loans); and *In re Cooper*, 167 B.R. 966 (Bankr.D.Kan. 1994) (3 children; $2,600 income; $9,000 student loans).

In summary, Sweeney, at the present time, is unable, for practical purposes, to pay her court-ordered child support obligation regarding accrued medical and dental expenses of $5,000. Surely, Sweeney's basic obligations to her children trump her obligations to repay her student loan. Sweeney's present standard of living is anything but lavish. The Bankruptcy Court is not clearly erroneous in its finding that Sweeney's repaying her student loan is an undue burden on Sweeney; rather, such finding is clearly the correct decision under all the circumstances. Thus, when accounting for Sweeney's total family income, including the income of Jay Young, this court finds that there is no clear error in the Bankruptcy Court's finding that repaying the student loans presents an undue burden on Sweeney.

## II.   CONCLUSION

IT IS HEREBY ORDERED:

(1) That Defendant's "Notice of Appeal" (Filing No. 2) and the Defendant's "Addendum to Notice of Appeal" (Filing No. 3) are denied; and

(2) That the Bankruptcy Judge's Order and Judgment discharging Sweeney's student loan is affirmed.